ELMORE v. ELMORE.

ADMINISTRATORS AND EXECUTORS—TORT—CLAIM AND DELIVERY.—An executor cannot be sued in his representative capacity for possession of a chattel received from his testator. *Divided Court.*

19—58

Before WATTS, J., Laurens, October, 1899. Affirmed.

Action in claim and delivery by L. C. Elmore against J. T. Elmore, executor of George Elmore. From order of Circuit Court sustaining magistrate in dismissing proceeding, plaintiff appeals.

*Mr. W. R. Richey,* for appellant, cites: 58 Ind., 278; 1 Bay, 58; 12 Rich., 284; 20 S. C., 477.

*Mr. J. L. M. Irby,* contra, cites: Code, 71; 46 S. C., 568; 12 Rich., 284; 20 S. C., 477. .

July 26, 1900. The opinion of the Court was delivered by

MR. JUSTICE GARY. The record contains the following statement of facts: "On the 21st day of November, 1898, appellant, L. C. Elmore, named above, commenced this action in Magistrate J. M. Hudgens' court in Laurens County against J. T. Elmore, as executor of the last will and testament of George Elmore, deceased, the defendant, respondent, above named, to recover possession of a mule alleged to be of the value of $75. On the trial of the case, Magistrate Hudgens dismissed plaintiff's complaint upon the grounds that the action was prematurely brought and that the plaintiff had not given any undertaking. The plaintiff appealed to the Circuit Court of Common Pleas for Laurens County, alleging error on the part of the magistrate. The appeal was heard at February, 1899, term of Court, by Judge George W. Gage, who reversed the judgment of the magistrate, and remanded the case to the court of J. M. Hudgens, magistrate, or his successor in office, for trial. There was no appeal from Judge Gage's order.

On the 8th day of July, 1899, the case came on for trial, was tried before Judge J. W. Peterson, magistrate, who had succeeded J. H. Hudgens as magistrate at Laurens, S. C. Before the plaintiff closed the testimony and before he concluded the examination of his first witness, Magistrate Peterson granted a nonsuit. The plaintiff again appealed to

the Circuit Court of Common Pleas for Laurens County upon various grounds.

The second appeal was heard at October, 1899, term of Court by Judge R. C. Watts, who did not consider plaintiff's grounds of appeal, but dismissed plaintiff's appeal and confirmed the judgment of the magistrate, on the ground that no action of claim and delivery of personal property could be sustained against a party as executor, for an unlawful possession. The plaintiff appeals to this Court, alleging error on the part of Judge Watts.

The practical question raised by the exceptions is whether there was error in the ruling of the Circuit Judge, that "no action of claim and delivery of personal property could be sustained against a party as executor for an unlawful possession." There can be no question as to the manner in which the defendant came into possession of the property, for in his answer he alleges as a fact, which the plaintiff does not deny, that he came into the possession of the mule as the executor of the will of George Elmore, deceased. The A. & E. Enc. of Law, vol. VII., 332 (1st ed.), lays down this doctrine: "At common law, no action founded upon a tort committed by the deceased, for which damages only could be recovered as satisfaction, such as trespass, trover, false imprisonment, assault and battery, slander, deceit * * * and the like—where the declaration imported a tort, to person or property, and the plea must be not guilty—lay against his executor or administrator. But if by reason of the tort the estate has derived pecuniary advantage, the representative could be compelled to account to the injured party in another form of action for the benefit so obtained. Thus if goods wrongfully taken away by the deceased remain *in specie* in the hands of the executor or administrator, the rightful owner might maintain replevin or detinue against such executor or administrator, to recover them back; or trover, laying the conversion to have been by the representative; or if sold, an action for money had and received to recover their value." In 3 Wms. on Ex'ors, sec. 1602, it is said: "In

some, however, of the cases above mentioned, a remedy may be had against the executor or administrator in another form: Thus, although at the common law, an action of trover upon a conversion of the testator dies with him, yet if the goods, &c., taken away continue still *in specie* in the hands of the executor or administrator of the wrongdoer, replevin or detinue will lie against such executor or administrator to recover them back; or trover, laying the conversion to have been by the executor; or in case they are sold, an action for money had and received to recover their value." The following cases throw light upon this question: *Jenkins* v. *Bennett,* 40 S. C., 393; *Huff* v. *Watkins,* 20 S. C., 477; *Chaplain* v. *Barrett,* 12 Rich., 284; *Ford* v. *Caldwell,* 3 Hill, 248; *Middleton* v. *Robinson,* 1 Bay, 58. If the testator had sold the mule, the plaintiff could have sued the executor for the value thereof, and we see no reason why he should not be allowed to recover the specific property, if he can show that it belongs to him.

Since there is no question that the mule came into the possession of the defendant as executor of the testator's will, I think the judgment of this Court should be, that the judgment of the Circuit Court be reversed and the case remanded for a new trial, but as two members of this Court are of the contrary opinion, the judgment of the Circuit Court must stand affirmed.

MR. JUSTICE POPE, *concurring with Justice Gary.* I am conscious that an example is to be set, but I am ready to assist in setting such example. I cannot conceive that a man who takes my mule, then dies, having named an executor, which executor takes possession of my mule as assets of his testator's estate, to be by him administered, and upon my demand for my mule declines to surrender the mule to me, and when I sue him to recover my mule, in a magistrate's court, his reply is, "You cannot sue me in claim and delivery," will be protected by law. If the executor surrendered the mule on my demand, without suit, will not he have to

account for such surrender to the legatees of his testator? If the executor refuses to surrender, must I stand by and take no steps to recover my mule? If the executor had been the original tort feasor, I admit he could plead that his taking of the mule was personal act, and in no manner connected with his testator's estate. But *the testator took my mule,* and died with said mule in his possession. His executor succeeds to his testator's possession, in his representative character. When I demand my mule and I am refused possession of him by such executor, on the ground that the mule belonged to the estate of his testator, of course I must sue him as executor. I concur in the opinion of Judge Gary and the judgment of reversal.

MR. CHIEF JUSTICE McIVER, *dissenting.* Being unable to concur in the conclusion reached by Mr. Justice Gary in the opinion which he has prepared in this case, I propose to state the grounds of my dissent. The appeal turns upon the single question whether the Circuit Judge erred in holding that an action of claim and delivery of personal property brought against the defendant as executor of the will of the testator, George Elmore, under the allegations that he, as such executor, is in the lawful possession of such property, cannot be maintained, but that such action should have been brought against the defendant individually and not as executor. This is an important question, far-reaching in its results, and it is claimed has never heretofore been distinctly decided in this State. It is not a mere question of pleading, or of the proper parties to an action, but its decision vitally affects the interests of those who may be interested in the estates of decedents. For if this case is allowed to proceed in its present form, and the plaintiff shall succeed in establishing his right to the possession of the mule sued for, or damages in lieu thereof, then it is clear that the liability will be fastened upon the estate of the testator, not by reason of any act of his own, for it is distinctly declared that "no wrong is imputed to defendant's testator," but solely because

of a tort committed by the defendant, who has been appointed executor of the testator's will. So that it seems to me that the practical inquiry is, whether one who has been intrusted by a decedent with the execution of his will can by any action or omission of his own, fasten a legal liability upon the estate of his testator, in the absence of any provision in the will investing him with authority so to do, and it is not pretended that there is any such provision in the will in this case. The doctrine is well settled that neither an executor (in the absence of authority in the will so to do), nor an administrator can, by contract, either express or implied, impose any new debt upon the estate of the testator, or intestate, as the case may be. *McBeth* v. *Smith,* 2 Treadway Con. Rep., 676; reported, also, in 3 Brev., 511; *Nehbe* v. *Price,* 2 N. & McC., 328; where Mr. Justice Huger, in delivering the opinion of the Court, said that the point had been repeatedly decided. *O'Neall* v. *Abney,* 2 Bail., 317; *Wilson* v. *Huggins,* 11 Rich., 410; *Cook* v. *Cook,* 24 S. C., 204. This rule is also recognized in the Court of Equity, as may be seen by reference to the case of *Boggs* v. *Reid,* which though an equity case, is reported in the appendix to 3 Rich., at page 450. So, also, it seems to be the well settled rule elsewhere. For it is said in II. Ency. of Law, at page 932 of the 2d edition of that very valuable work: "The rule is well settled that an executory contract of an executor or administrator, if made on a new and independent consideration, moving between the promisee and the executor or administrator as promisor, is his personal contract, and does not, in the absence of authority given by statute, or by the will of the decedent, bind the estate, though the consideration moving from the promisee, is such that the executor or administrator could properly have paid from the assets and been allowed for on the settlement of his accounts. So inflexible is the rule denying to personal representatives the power to bind by any original contract the estates committed to their charge, that its application is not affected by the fact that the contract was made, or the debt incurred for the benefit of the estate"—citing quite an array of authorities. I may

add, however, that notwithstanding this well settled rule, the
Court of Equity, in a proper case, where an executor has paid
an obligation contracted by him for the benefit of the estate,
will allow him credit for the amount so paid, although no
action could be maintained against him as executor to en-
force the payment of such obligation—though this is scarcely
pertinent to the present inquiry.

Now, if an executor or administrator has no power to
fasten upon the estate, which he represents, any liability by
contract, either express or implied, even though such contract
may be entered into for the benefit of the estate, how much
stronger is the reason for holding that an executor has no
power to fix upon the estate placed in his charge any liability
for any tort that he may commit, and hence that no action
based upon a tort committed by him can be maintained
against him *as executor,* for that would be imposing upon
*the estate* a liability for his own wrongful act.    This view is
supported by authority.    See II. Enc. of Law, at page 942
of 2d edit., where it is said: "Executors and administrators
can create no liability against the estates represented by them
by any tortious or wrongful act.    Their torts are their indi-
vidual acts, for which the only remedy of the person injured
is against them individually, and the rule is the same whether
the injury results from intentional wrong or negligence."
On the next page of the same volume, under the subdivision
17, treating of the liability of an executor or administrator
for taking property of third persons, I find the following
language: "If an executor or administrator, as such, receives
money or takes possession of property to which the estate has
no right, he is liable to an action by the real owner for its re-
covery.    The authorities are uniform in holding this, and
they generally hold that he incurs personal liability; but there
is some diversity as to whether his liability is only personal,
or whether he also becomes liable in his representative capac-
ity.    The English Courts, adhering to the principle that an
executor or administrator has no power to create any new
liability on the estate, hold that he becomes liable in his indi-

vidual capacity alone, though the money or property is applied to the purposes of the estate, and some of the decisions in the United States are to the same effect." (Citing cases from the States of Alabama, Arkansas, Iowa, Massachusetts, Mississippi, New Jersey, Pennsylvania and Virginia.) The writer of the article in the Encyclopoedia then proceeds to say: "But other authorities have adopted a more equitable rule, and hold that if an executor or administrator has applied to the use of the estate money or proceeds of property belonging to third persons, he is liable in his representative capacity, and that the person injured may elect whether he will hold the executor or administrator liable personally or in his representative capacity." The cases of *Ford* v. *Caldwell,* 3 Hill, 248, and *Huff* v. *Watkins,* 20 S. C., 477, seem to indicate that the Courts of this State are disposed to hold what the writer in the Encyclopoedia calls the "more equitable doctrine," that where the estate of a decedent has received benefit from the use of money or property not rightfully belonging to it, an action *ex contracto* but not an action *ex delicto* may be maintained against the executor or administrator, as the case may be, in his representative capacity, for the recovery of the amount to which the estate has thus been benefited. This, it seems to me, is the true and logical doctrine, but that in no case can an action *ex delicto* be maintained against an executor or administrator in his representative character. If the tort upon which such an action is founded was committed by the decedent, then it dies with him. *Chaplin* v. *Barrett,* 12 Rich., 284, and *Huff* v. *Watkins,* 20 S. C., 477. But if the tort was committed by the executor or administrator, then the action can only be brought against him in his individual and not in his representative capacity; for, as is said in the foregoing quotation from the Encyclopoedia: "Their torts are their individual acts, for which the only remedy of the person injured is against them individually." In this connection it may be noted that the case of *Rose* v. *Cash,* 58 Ind., 278, relied upon by the appellant, is one of the many cases from Indiana cited

to sustain the doctrine laid down in the Encyclopoedia, cited above; from which I infer that the action in that case was brought against the defendant in his individual and not in his representative capacity; and that what the Court really held was that he would be liable, "whether he claim it as owner, agent, administrator, trustee, custodian or in any other capacity," if he tortiously withheld the possession of the property sued for from the real owner. But as I have not at present access to that case, this is a mere inference, from the fact that I find it cited in the Encyclopoedia to sustain a doctrine contrary to that for which it is cited in the argument of the counsel for appellant. The case of the executors of *Middleton* v. *Robinson,* 2 Bay, 58, likewise cited by appellant's counsel, has no application to this case. That was a special action on the case, brought by the executors for the value of certain cattle taken from the plantation of testator in his lifetime. There was also a count in the declaration for money had and recovered. The Court sustained the action upon two grounds: First, because by the terms of the statute of 4th Edward III., ch. 7, executors were expressly allowed to sue for trespass in taking away the property of a testator in his lifetime; second, because the tort might be waived and the action proceed *in assumpsit* under the count for money had and received. But it will be observed that the statute of 4th Edward, now incorporated in the Rev. Stat. of 1893, as sec. 2319, only gives the right to executors to sue trespassers, but does not give any right to third persons to sue executors for trespasses or other torts, and we know of no statute which confers any such right. As to the second ground, it only proceeds upon the well settled doctrine that there are cases in which the tort may be waived and the action proceed upon proper allegations as an action *ex contracto,* as was properly allowed in that case under the count in the declaration for money had and received, which rests upon an implied assumpsit. But in the case now under consideration the action is not brought by an executor against an alleged trespasser upon the property of his testator (which is the only case pro-

vided for by the Statute of Edward), but the action is brought *against* an executor for an alleged tort committed by him, and there is no pretense that the tort has been waived. It is plain, therefore, that the case cited by appellant has no application to the present case.

It seems to me, that it would not only be analogous but illogical to hold that, while an administrator or executor cannot be sued in his representative capacity on a contract made by him and not by his intestate or testator, as the case may be, whereby a new debt or liability may be fastened upon the estate which he represents, yet he may be sued in his representative capacity for a tort committed by him, with which his testator or intestate had nothing whatever to do, and is in no way responsible for; and thus a new liability may be fixed upon the estate which he represents. Such a doctrine would not only be anomalous and illogical, but would tend to prejudice, perhaps to destroy, the interests of those beneficially interested—oftentimes minors—in the estates of decedents. In the present case, no wrong whatever is imputed to defendant's testator, and, on the contrary, appellant in his argument distinctly repudiates any intention to make such an imputation. The action is based upon a tort committed by the defendant since the death of his testator, in wrongfully withholding the possession of the chattel sued for from the alleged rightful owner, and for that he can only be held liable in his individual and not in his representative capacity. It is not difficult to conceive of a case in which no wrong could be imputed to the testator in taking and retaining the possession of the chattel in dispute, and yet the person who may unlawfully withhold the possession of such chattel from the rightful owner would be guilty of a wrong in so doing. For example, if the testator was entitled to a life interest only in the chattel, with remainder over to the plaintiff, there could be no possible wrong on the part of the testator in taking and retaining possession of such chattel during his lifetime. But if, after his death, any person, be he executor or administrator or a third person, should unlawfully withhold the

possession of the chattel from the person entitled in remainder to it, then the wrong done is that of such person, for which he would be liable in his individual and not in his representative capacity. If it should be said that it would be a hard case upon the executor, if he should be held individually responsible in a case like the one supposed, the answer is obvious. The Court of Equity would, in a proper case and upon a proper showing that the executor had acted in good faith, allow him credit for whatever he had been required to pay in an honest effort to protect the interests of the estate committed to his charge. It is every day practice to allow the executor, upon his accounting, credit for amounts paid out by him for counsel fees and other proper expenses incurred by him in the management of the estate, upon contracts for which he is responsible in his individual and not in his representative capacity, whenever the Court is satisfied that such obligations have been incurred in good faith for the benefit of the estate.

I think there was no error upon the part of the Circuit Court in holding that this action could not be maintained against the defendant in his representative capacity, but that the action should have been brought against the defendant individually. This view being conclusive of the case, there was no error in holding that it was not necessary to pass upon appellant's exceptions.

MR. JUSTICE JONES *concurs in the dissenting opinion of* CHIEF JUSTICE McIVER.